THE CITY OF ROCHESTER, Plaintiff, *v.* CHARLES FALK, Defendant.

City Court of Rochester, Criminal Branch, January 19, 1939.

*Daniel J. O'Mara, District Attorney* [*Thomas P. Culhane* of counsel], for the plaintiff.

*Abraham Edelstein* [*Joseph Kaufman* of counsel], for the defendant.

TOMPKINS, J. The defendant is charged in an information with having been convicted of a third violation of the speed ordinance of the city of Rochester within a period of eighteen months. He challenges the legality of the procedure.

August 21, 1938, an information was filed in this court charging the defendant with the violation on that date of section 98 of the Public Safety Ordinance of the City of Rochester, commonly known as the " speed ordinance." The defendant appeared in court, pleaded not guilty and demanded a jury trial. It was granted. (*City of Rochester* v. *Falk*, 7 N. Y. Supp. [2d] 517.) A jury trial was had, and the defendant was found guilty on December 2, 1938.

Section 71, subdivision 2, of the Vehicle and Traffic Law was amended by chapter 284 of the Laws of 1936, so as to provide for the mandatory revocation of a license to drive a motor vehicle, where the holder thereof is convicted " (c) of a third * * * violation, committed within a period of eighteen months, of any provision of section 56 of this chapter or any other ordinance or regulation limiting the speed of motor vehicles."

The provision for the forfeiture is definite and mandatory. The procedure is neither clear nor definite.

Subdivision 1 of section 71 enumerates who may revoke. It includes a judge of this court. Section 71-a, added by chapter 558 of the Laws of 1937, provides that upon conviction for an offense where revocation is mandatory, " as provided in subdivision 2 of section 71," the judge must require the convicted person to surrender his license.

Subdivision 2 of section 71 enumerates, in addition to the offense herein charged, the crimes of homicide, assault, criminal negligence, when arising out of the operation of a motor vehicle, driving while intoxicated, and leaving the scene of an accident. Upon a con-

viction for each of these crimes, revocation of the operator's license is mandatory. The convicted operator is before the court. Such conviction is the sole factor on which to base revocation. No additional evidence is necessary. The procedure there is plain. The judge must thereupon revoke and take the license.

The defendant herein on August 21, 1938, was not charged with or tried for an offense which, by its nature, carried mandatory revocation. Conviction of the offense charged did not carry the drastic penalty of forfeiture. On a verdict of guilty the presiding judge had power to impose sentence only within the provisions of the ordinance; imprisonment not to exceed 150 days or a fine not exceeding $150, or both. Before he might declare forfeiture, he must determine that such conviction there had before him was the third offense committed within eighteen months. Such facts must be established by competent evidence. They include the facts of three convictions, the dates of the first and third offenses and the identity of the convicted.

How are these facts to be determined? It may well be that none of them are before the court on the trial. They form no part of the issue to be tried. Prior convictions may be unknown even to the prosecution. If they exist in fact, may they be legally established at a later date? Assuredly. Ignorance of the prosecution of earlier offenses may not, when discovered and established, permit the convicted driver to escape forfeiture.

What is the proper procedure? Subdivision 3 of section 71 provides that where the revocation is permissive, the holder of the license shall have an opportunity to be heard, except where the revocation " is based solely on a court conviction or convictions." There is no similar provision or any other procedure prescribed where the revocation is mandatory. Where the offense is driving while intoxicated, the holder is before the court when convicted. He has notice. When, however, revocation is based on a third conviction, if the licensee is there and is confronted with the accusation of a third conviction, he may there challenge both the identity of the offender of the two prior convictions and the date of the first offense. When not so confronted, may a judge or any other official authorized to revoke, thereafter summarily determine without notice to the accused, that he has been three times convicted of offenses occurring within eighteen months?

Operating an automobile on the highway is not a right a person may exercise because of his citizenship. (*People* v. *Rosenheimer,* 209 N. Y. 115, 121.) Highways, as they were originally developed, were for the convenience and easy passage of persons on foot, on horseback, in vehicles drawn by horses or oxen, and also for the

transportation of commodities by the same means. They were open to unrestricted use by all persons. No license might be required. Toll roads were open to all upon payment of the same fee for the same or similar vehicles.

At the advent of the automobile there were no restrictions on their use until a registration fee was imposed to produce funds for the improvement of the highways. With the increased use of our highways by the rapidly multiplying more powerful and faster cars, accidents due to careless and inexpert operators mounted with alarming rapidity. To safeguard the lawful users of our highways, the Legislature provided that all who operated motor vehicles on our highways should procure a license to be granted those who demonstrated their fitness and ability. The license was not the gift of a sovereign as a favor. It was granted by the State as a right to whomsoever should establish his ability. While a license may not create a property right which may be sold or assigned, nevertheless a multitude depend upon its exercise as a means of going to and from their places of employment. Chauffeurs use it as a means of a daily livelihood. It has a very real value to the licensee. It may not be revoked arbitrarily. Only when it has been legally established that the holder by its misuse has menaced the safety of those using the highways.

It would seem beyond peradventure that this right on which a livelihood may rest, may be revoked only by due process of the law. There can be no official magic, no inherent omniscience either in the Commissioner of Motor Vehicles and his appointees, or in judges which, when called upon to revoke a license to drive an automobile, would warrant tossing that ancient but unbroken shield of liberty, " due process of law," into the ash heap of worn-out and discarded relics of antiquity. In discussing " due process of law " Judge EARL said, in *Stuart* v. *Palmer* (74 N. Y. 183, at p. 191): " A hearing or an opportunity to be heard is absolutely essential." In considering the revocation of a milk dealer's license, the court in *People ex rel. Levy Dairy Co.* v. *Wilson* (179 App. Div. 416), said: " The right to notice is fundamental, and so natural it does not require discussion."

When revocation immediately follows conviction because of the nature of the offense, there is notice. The holder is present. Due process is had. Where revocation depends, not on the nature of the offense, but upon the number of convictions, then evidence must be produced before the revoking official — evidence of the fact of the three convictions, the identity of the licensee and the dates of the commission of the first and third offenses. The accused is entitled to challenge the identity of the person convicted. Deprived of the

opportunity to so challenge, due process is violated. Whenever conviction of a second, third or fourth felony carries additional punishment, the accused by section 1943 of the Penal Law is entitled to notice of the charge; and, unless he plead guilty thereto, is entitled to trial by jury as to the question of identity. The principle requiring proof as to identity and the opportunity to deny, is the same, whether the prior conviction is for a felony or for a lesser offense.

Is the procedure followed herein proper? The accusation is set out as an information charging the defendant with three convictions and praying for his arrest. The third conviction is not for a new offense. The penalty or punishment under the city ordinance is no different for a third offense than for a first offense. Within the limits prescribed, it is discretionary with the court. It is the fact of convictions for three offenses committed within eighteen months which works forfeiture of the license. The charge should not be put in the form of an information. The proceeding is not the prosecution of a crime. It is a proceeding to revoke a license. It should be instituted with notice of a hearing, giving the time, place and the charge. An arrest is not warranted. If the facts are established, the original discretionary sentence may still stand, but revocation must follow — however harsh the penalty may seem. The court has no alternative under the law.

Although on the hearing the controverted fact of identity is determined, it is not a trial before the court, as trials are commonly understood, from which an appeal may be taken. There is no statutory right to a determination of the facts by jury as in the case of a felony. The Commissioner of Motor Vehicles is empowered to revoke when the facts are established. To determine the facts he has no power to impanel a jury. If he may not call a jury for that purpose, a judicial officer likewise may not. By subdivision 6 of section 71, revocation and suspension are administrative acts, and as such are reviewable by the Supreme Court. The method of review is by certiorari. (*People ex rel. Albrecht* v. *Harnett*, 221 App. Div. 487.) The procedure herein is without warrant in law.

While the court is in duty bound to pronounce penalties which are mandatory, it may not wholly close its eyes to facts of common observation which may make a mandatory penalty at times seem harsh and unjust; nor ignore the facts that where trials by jury are had, as in cases of driving while intoxicated, acquittals by juries frequently occur, although the facts would seem to warrant conviction. That mandatory revocation of an operator's license for three speeding offenses may work injustice is readily conceivable.

The first two violations may have occurred in one month, which is then followed by seventeen months of orderly driving. On the eleventh hour of the last day of the eighteenth month the offender may have driven by an intersection at twenty miles an hour, fifteen being the limit in this city. An arrest is followed by conviction. This seemingly innocuous violation produces forfeiture; while for the offense of sixty miles per hour, if committed but two hours later, at one A. M. the following day, the license could not have been suspended, even for one day, much less revoked.

Speed ordinances are absolutely necessary to the safety of the users of city streets. Frequent violations should unquestionably result in the suspension of the violator's license. The length of the suspension, within a fixed maximum, it would seem should be discretionary with the court, not a mandatory revocation.

The law to be respected must impress the citizen as both reasonable and fair. Maximum penalties should seldom be mandatory. When mandatory, acquittals by juries are and will continue to be frequent.

The procedure herein instituted is unwarranted. As stated, it should be brought on by a notice to the defendant of the time, place and purpose of the hearing. The defendant's motion to dismiss the information is granted.

Let a written notice of a hearing to revoke, giving the time, place and purpose thereof be made and served upon the defendant.